UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| KEON LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   12-cv-1041 |
| | ) | |
| RANDY PFISTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff's request for equitable relief. As explained herein, because the jury found an Eighth Amendment violation of Plaintiff's rights from Defendant Pfister's failure to protect Plaintiff from a known substantial risk of serious harm, the Court finds it appropriate to award equitable relief, in the form of an injunction requiring Defendant to comply with constitutional requirements, and submit a plan outlining this compliance.

### PROCEDURAL HISTORY

In the operative pleading, Plaintiff's Amended Complaint filed on May 8, 2012, (Doc. 15), Plaintiff raised two claims, both of which relate to the repeated problem of other inmates throwing feces and other bodily fluids on him while he recreates in the yard. He named four defendants, all employees of Illinois Department of Corrections ("IDOC") in both their individual and official capacities, and requested both monetary damages and injunctive relief.

One claim, alleging discrimination against segregation inmates at Pontiac Correctional Center, was dismissed on summary judgment. (Doc. 32 at 7-8). The other claim, alleging Defendants failed to protect Plaintiff from a substantial risk of serious harm, the harm being bodily fluids thrown on him in the yard, was tried before a jury. Defendant Godinez, the Director of IDOC, was dismissed pursuant to a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). After hearing the evidence presented by both sides, the jury determined that Defendants Reed and Lemke were not liable. However, they found that Defendant Pfister, warden of Pontiac Correctional Center, was liable, and awarded Plaintiff $1.00 in nominal damages, and no punitive damages.[1]

## FACTUAL BACKGROUND

Segregation inmates at Pontiac are able to recreate outside on a regular basis, but only in individual pods, or cages,[2] that are outside on the yard. The testimony at trial revealed that these pods are next to one another, in rows, in various yards throughout the facility. They are made of metal, and resemble large dog cages. They are large enough that the inmates cannot touch both sides at the same time, and cannot touch the top. The pods prevent physical contact between the inmates. However, some of the segregation inmates have a habit of throwing feces, urine, and/or blood on other inmates that are in nearby pods. They sometimes do

---

[1] Plaintiff was not entitled to compensatory damages under the law because he did not allege or prove any physical injury. *See* 42 U.S.C. § 1997e(e).

[2] Though the institution uses the term "pods" to describe them, most of the testimony referred to them as "cages." Although "cages" is more descriptive, the Court will use the term "pods" to describe the structures, since that is what the institution uses formally.

this with the aid of milk cartons or plastic bags, which are not supposed to be brought into the yard, but sometimes are. If these utensils are not available, they sometimes use their shoes or even their mouths. Plaintiff has been hit with these fluids on multiple occasions.

Pontiac correctional center does have some policies in place that could limit the risk of this behavior, if fully executed. Before being taken out onto the yard, segregation inmates are supposed to be subjected to a strip search. This search should reveal any improper items inmates attempt to bring onto the yard, including milk cartons and plastic bags. However, the testimony showed that some of the officers did not conduct searches as thoroughly as policy requires. It is also a violation of the rules at Pontiac to engage in the behavior of throwing bodily fluids on other inmates. In fact, one of Plaintiff's witnesses had received discipline for throwing bodily waste while on the segregation yard. However, the testimony indicates it is only caught and punished by correctional center staff on occasion, and the behavior occurs frequently without intervention by staff. Plaintiff and other witnesses testified to telling Defendant Pfister of the problem, but saw no changes, and the testimony showed the pervasiveness of the behavior.

## DISCUSSION

Before a federal court can award a permanent injunction, a plaintiff must satisfy four requirements:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

> warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Under the Prison Litigation Reform Act, any injunctive relief regarding prison conditions must be "narrowly drawn, extend[ ] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary." 18 U.S.C. § 3626(a)(1)(A). As the Seventh Circuit recently indicated, when crafting an injunction to address a constitutional concern in prisons, a court should order, in general terms, that the party craft a policy that comports with the constitutional provision, and then "verify that the plan they submit satisfies the relevant constitutional standards." *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012). The Court understands this case to mean the injunction awarded is the general instruction to satisfy constitutional obligations; the verification of the plan is simply a way to ensure compliance with the injunction.

In the present case, the jury determined that Defendant Pfister, warden of Pontiac Correctional Center, was liable to Plaintiff on his failure to protect claim. Specifically, this claim requires a showing that Defendant was aware of a substantial risk of serious harm, and failed to take appropriate steps to protect Plaintiff from this harm. *See, e.g.*, *Estate of Rice v. Corr. Med. Servs.*, 675 F.3d 650, 669 (7th Cir. 2012). The jury was instructed as such. (*See* Doc. 55). Here, the serious harm was the harm from having bodily fluids, including feces, urine, and blood, thrown onto Plaintiff while he was in the segregation recreation yard. Accordingly, Defendant Pfister's efforts to prevent such harm, if any, were determined by the

4

jury to be unreasonable and inadequate, thus resulting in this constitutional violation.

This jury verdict, supported by the evidence, shows Plaintiff has suffered an irreparable harm. The evidence also shows the risk is ongoing, such that Plaintiff will continue to suffer irreparable harm, both mental and potentially physical, absent equitable relief, as he will continue to face the risk of bodily fluids being thrown on him while in a pod in the yard. Monetary damages are clearly inadequate to redress this harm. Because he did not prove a physical injury, he was not entitled to any compensatory damages. *See* 42 U.S.C. § 1997e(e). Thus, he could only receive nominal damages of $1.00, and punitive damages, which require a higher showing. The $1.00 he received is clearly inadequate to redress his harm. The Court also finds the balance of hardships weighs in Plaintiff's favor. Though Defendant will have a burden from changing policy, it is outweighed by Plaintiff's hardship of the risk of facing this method of assault when recreating outside. Finally, the public interest would be well served by a policy that protects basic constitutional rights.

Thus, the Court finds equitable relief appropriate to redress the harm.[3] Plaintiff's specific request, in his Amended Complaint, of allowing segregated inmates to be in the yard without individual pods, is denied, as it is not narrowly drawn to the violation. However, his general request for equitable relief is granted. The Court will order Defendant Pfister, in his official capacity, to take steps to prospectively correct the constitutional problem. Recognizing that courts must

---

[3] Because the other Defendants were either dismissed or found not liable by the jury, the Court will not award equitable relief against them. The injunction applies only to Defendant Pfister, in his official capacity.

provide for flexibility and defer to the expertise of prison officials, and keeping with the requirements of § 3626, the Court will not order a specific policy or practice to resolve this problem. Rather, Defendant Pfister must craft a policy that will address the constitutional violation found by the jury, and must submit a remedial plan to the Court within twenty-eight days for the Court to verify that it satisfies the Eighth Amendment. Defendant is also invited to submit a legal brief in support of the plan. Plaintiff will then be given twenty-one days to respond, and the Court will then review the plan. Upon approval of Defendant's remedial plan, the Court will terminate the case and issue its judgment, but the Court will retain jurisdiction to enforce the injunction, as is within its inherent authority. *McCall-Bey v. Franzen*, 777 F.3d 1178, 1183 (7th Cir. 1985); *see also Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006) (noting the "inherent power of a court that has issued an injunction, even if that injunction ended the lawsuit, to enforce it, as by contempt proceedings").

To provide some direction to the parties, a few points bear emphasizing. First, this case was not a class action; the jury only found that Plaintiff's rights were violated. Thus, the remedial plan need only address Plaintiff's rights. Second, it seems far beyond the limitations in § 3626 to require that the pods be removed, or that Plaintiff be allowed to have yard time without being put in an individual pod. Defendant may choose to remedy the constitutional problem in that manner, but because there are many ways to correct the violation, the Court will not require that or any other specific remedy be implemented. Third, this case deals only with the throwing of bodily fluids while in the segregation yard. Though there was evidence

6

presented that indicates this practice may occur in other settings within the prison facility, Plaintiff's claim related only to the practice while in pods in the segregation recreation yard. Finally, although Defendant is free to craft a plan to take steps other than those listed below and is by no means limited by these suggestions, the Court will list some of the possible mechanisms that it suggests could, alone or in combination, address the Eighth Amendment concerns. Some of the options that could be considered by Defendant are: more stringent enforcement of the rule against throwing bodily waste, policies that ensure officers adequately perform strip searches before other segregation inmates are taken to the yard, physical barriers to protect Plaintiff from the waste being thrown, or allowing Plaintiff yard time when fewer or no other segregation inmates are within throwing distance. Again, these are only suggestions, and may be considered or disregarded as Defendant finds appropriate. The Court only requires that the remedial plan comply with the minimum requirements of the Eighth Amendment.

## Conclusion

IT IS THEREFORE ORDERED:

1. Plaintiff's request for equitable relief in his Amended Complaint (Doc. 15) is GRANTED IN PART.

2. Defendant Randy Pfister, in his official capacity as warden of Pontiac Correctional Center, is ORDERED to implement procedures that comply with the minimum requirements of the Eighth Amendment, specifically with regard to appropriate steps to protect Plaintiff from the substantial risk of

serious harm presented by the throwing of bodily fluids onto Plaintiff while he is in an individual pod in the segregation recreation yard. This prospective relief is terminable in the instances specified in 18 U.S.C. § 3626(b)(1).

3. Defendant Pfister SHALL submit to this Court, within twenty-eight days of the date of this Order, a remedial plan that ensures compliance with this injunction.

4. Plaintiff MAY submit a response to the proposed remedial plan within twenty-one days of service of Defendant's plan and any brief in support.


Entered this <u>27th</u> day of January, 2014.


                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                        United States Senior District Judge